**Seth v. Capitol Paper Co.**
*[Cite as 6 AOA 24]*

*Case No. 11539*
*Montgomery County, (2nd)*
*Decided August 29, 1990*

*Dwight D. Brannon, James J. Fullenkamp, Brannon, Hall & Tucker, 6 South Patterson Blvd.,*

*Suite 300, Dayton, Ohio 45402, for Plaintiff-Appellee/Cross-Appellant.*

*Jack C. McGowen, Baden, Jones & Scheper Co., L.P.A., Suite 300, Hamilton Building, 222 High Street, Hamilton, Ohio 45011, for Defendant-Appellant/Cross Appellee.*

*John W. Slagle, 2700 Kettering Tower, Dayton, Ohio 45423, for Defendant-Appellant/Cross Appellee.*

GRADY, J.,

In this appeal we are asked to determine whether the trial court erred in granting Plaintiff-Appellee Patrick Seth a trial by jury on the issue of liability in a claim of intentional tort brought pursuant to R.C. 4121.80. The trial court found the provisions of that statute denying the right to trial by jury to be unconstitutional. We agree. However, we also find that the trial court erred to the prejudice of Defendant-Appellant Capitol Paper Company in failing to submit to the jury certain interrogatories requested by Defendant-Appellant Capitol Paper Company and erred in failing to grant a judgment notwithstanding the verdict in favor of Defendant-Appellant Capitol Paper Company upon its motion pursuant to Civ. R. 50(B). The matter will be remanded to the trial court for entry of judgment in favor of Defendant-Appellant.

## I. Factual Posture

Plaintiff-Appellee Patrick Seth was employed by Royal Temporary Services and assigned by Royal to work for Capitol Paper Company. Seth's duties at Capitol consisted of using a table saw to cut rolls of scrap paper stock from around hollow cores. Seth was injured while performing those duties.

The saw used by Seth is a double blade table saw. The "table" is approximately waist high and measures 61 inches in length and 36 inches in width. The top is made of heavy gauge steel. Two round saw blades extend through slits in the table top approximately 22 inches apart. The blades each extend about one inch above the table surface and, when in operation, turn at a rate of 3200 rpm. The saws are intended for use by two operators, one positioned on each side of the table and each performing the same task as the other.

Seth testified that prior to beginning his service at Capitol Paper Company he had no training in the operation of power or industrial equipment. When he was first sent to Capitol, Seth was taken to the job site by the company manager and instructed to follow the directions of a co-worker, Kenneth Phann, in performing the job operations. Seth testified that the instructions from Phann lasted only a few minutes.

Seth testified that he was instructed to grasp the paper rolls in his hands and to then pass the roll through the turning saw blade from left to right in order to cut the paper on the roll. After removing those sheets of paper that were cut, he was to then return the roll to its original position and pass it through the saw blade again to remove any remaining paper. The operation was to be repeated until all paper was cut and could be removed from the roll.

On the date of his injury, Seth was wearing work gloves that he provided himself. He testified that he wore gloves to protect his hands from the cold and from cuts from the paper he handled. His injury occurred when the rotating saw blade caught the glove on his left hand as he was returning the roll from right to left after making an initial cut. The injury was to his left hand, and involved the thumb and forefinger which were cut by the moving saw blade. On the day Seth was injured the saw blades were not covered by any form of guard device. William Tokar, Vice President and Safety Officer of Capitol Paper Company, testified that the saw was purchased by Capitol from its predecessor, Dayton Paper Stock Company, in 1978 or 1979. Tokar testified that at some time prior to purchase there were guards on the machine, possibly as early as 1960. However, on the date of the accident on October 13, 1987, there were no guards.

The guard identified by Tokar consisted of a metal hood surrounding the exposed upper half of the saw blade and fixed to rotate from left to right on the same axis. A raised lip on the left side of the hood caused it to rotate aside as stock passing from left to right across the table surface engaged the lip before passing through the rotating blade. Once the stock was through the blade, a spring device caused the hood to rotate back from right to left to cover the moving blade. A device of that type would have caused the guard to cover the saw blade after the initial cut performed by Seth, and the blade would have been covered at the time Seth was drawing the stock back from right to left when the exposed blade caught his glove and drew his hand down into the saw.

Wade E. Troyer, a licensed professional engineer, testified that he was experienced in using safety guards on industrial equipment. Troyer testified that because the machine lacked hood guards it was inconsistent with specific safety

requirements of the Ohio Industrial Commission and the Federal Occupation and Safety Health Administration. Troyer testified that the table saw, without guards to cover the turning blades, presented such a risk that an injury to an operator would be substantially certain to occur. He also stated that in his opinion Seth would not have been injured had a guard been installed on the blade.

Evidence was produced by Plaintiff-Appellee to show that Capitol Paper Company was aware that operators of the table saw had been injured at four times in the past. William Tokar said that these incidents produced only minor nicks and cuts. The witnesses agreed that employees were regularly instructed to use care in their operation of the machine to avoid accidents. No evidence was presented to show that Capitol Paper Company had itself removed guards from the saw, but one employee witness testified that a company official had on several occasions promised to obtain and install guards on the saw but had not done so.

Seth filed a seven count complaint alleging, among other things, that Capitol committed an intentional tort by requiring him to work on a table saw which Capitol knew presented a substantial certainty of injury due to a lack of safety devices and a history of prior injuries to other employees. Seth sought compensatory and punitive damages, and requested a jury trial on all issues of material fact.

Capitol moved to strike Seth's demand for jury trial, arguing that R.C. 4181.20 left the determination of liability to the court. The court denied the objection, finding that ". . . the Seventh Amendment to the U.S. Constitution and Section 5, Article I, of the Ohio Constitution guarantee a party the right to trial by jury." (Tr. 3). Each party also filed a motion for summary judgment, which was overruled.

Capitol moved for a directed verdict at the conclusion of Seth's case, arguing that the evidence failed to show intent to injure or knowledge of the substantial certainty of injury required by R.C. 4121.80. The court denied the motion and Capitol presented its case. Capitol renewed its motion at the close of the presentation of all evidence, and it was again denied.

Capitol moved the court for special instructions to the jury on the issue of intent, defining "substantial certainty" of injury and distinguishing its quality of culpability from acts of mere negligence or recklessness. The court declined to give the instruction requested, finding that its distinctions "... would only inject issues into the

case which are not in there and would serve to confuse rather than inform the jury." (Tr. 210). Instead, the court gave its own instruction which it concluded adequately embodied the tripartite test of *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100.

Capitol also requested that the court present two interrogatories to the jury. The court declined to give the interrogatories, finding that they were not in the proper form and thus not required for submission to the jury under Civ. R. 49(B).

The jury returned a verdict for Seth. The trial court then ordered that Seth be allowed to participate in the Workmen's Compensation Fund to compensate him for his injuries, as provided by R.C. 4121.80.

Following the trial, Capitol filed a motion for judgment notwithstanding the verdict and a motion for a new trial on the issue of liability, arguing that Seth failed to sustain his burden of proof. The court overruled both motions, finding that Seth met his burden as defined in R.C. 4121.80 and applicable case law.

Capitol filed a timely notice of appeal presenting four assignments of error. Seth filed a cross-appeal presenting a single assignment of error.

## II. Jury Instructions and Interrogatories

Capitol's first assignment of error states:
THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF DEFENDANT BY REFUSING TO INSTRUCT THE JURY ON THE SPECIAL INSTRUCTIONS AND INTERROGATORIES FILED BY DEFENDANT.

### A. Jury Instructions

A jury charge must be a distinct and unambiguous statement of the law as applicable to the facts before the court. In submitting a case to a jury, the court must "separate and definitely state *** the issues of fact made in the pleadings, accompanied by such instructions as to each issue as the nature of the case may require." *Marshall v. Gibson* (1985), 19 Ohio St. 3d 10, 12 quoting *Baltimore & Ohio R.R. v. Lockwood* (1905), 72 Ohio St. 586 paragraph one of the syllabus. Reversible error arises if the jury charge is incomplete, misleading, or fails to define legal terms which are essential to the jury's deliberative process. *Marshall, supra.* See, also, *Szymczak v. Midwest Premium Finance Co.* (1984), 19 Ohio App.3d 173.

However, the propriety of a jury charge does not hinge on isolated flaws. As we recently observed in *State v. Penson* (February 26, 1990), Montgomery App. No. 9193, unreported:

"A reviewing court should never judge the propriety of a *** jury instruction in isolation. Rather, *in determining whether a jury instruction violated some norm, a reviewing court must look at the contents of the overall charge.*" (Citations omitted) (Emphasis supplied)

Consequently, the presence of prejudicial error may only be predicated on a flaw that cripples the entire charge. See, *Shade v. Carnegie* (1982), 70 Ohio St.2d 207.

R.C. 4121.80 employs two distinct levels of intent for establishing employer liability for an intentional tort. The first level of intent exists "where the actor does something which brings about the exact result desired." *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 175. This level of intent is analogous to the criminal law concept of "purposefulness." *Id.* at note 1. Alternatively, intent may inferentially exist where "the actor does something which he believes is *substantially certain* to cause a particular result, even if the actor does not desire that result." Id. at 175. The term "substantial certainty," as used in R.C. 4121.80, connotes a level of intent analogous to the criminal law concept of "knowing." *Id.* at note 1. It implies a level of culpability higher than mere negligence or recklessness. See, *Van Fossen, supra.*

Applying these principles and concepts here, we find no prejudicial error in the court's jury charge. The relevant portion of the charge stated:

"To establish this intentional act, you [the jury] must find by a preponderance of the evidence (1) that the Defendant knew of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; and (2) *that the Defendant knew that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee was a substantial certainty and not just a high risk;* and (3) that the Defendant, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." (Emphasis supplied)

Although the term "substantial certainty" was not defined in the charge, this alone does not render the charge prejudicially flawed. Examining the total charge, we note that the court correctly emphasized that "substantial certainty" was higher than high risk and that Seth had to show Capitol *knew* of the substantial certainty of injury. Further, we note that the charge properly allocated the burdens of proof, correctly instructed the jury on the requisite evidentiary findings, and provided a clear explanation of the applicable law. Finally, we observe that the term "substantial certainty," albeit a term representing a legal concept, is not so remote from the ordinary juror's appreciation as to require an exhaustive and potentially confusing definition of its meaning. "Substantial certainty" does not have the same purely legal meaning as for example, equitable estoppel. *Szymczak, supra.* One can reasonably conclude that a juror of average intelligence and experience would grasp the idea that substantial certainty connotes a high degree of proof that exceeds the proof necessary to demonstrate mere negligence or recklessness.

We find no prejudicial error in the jury charge.

B. Interrogatories to the Jury

Civ.R. 49(B) states:

"(B) General Verdict Accompanied by Answers to Interrogatories. The court *shall submit* written interrogatories to the jury, together with appropriate forms for a general verdict, *upon request of any party* prior to commencement of argument. *** The court shall inform counsel of its proposed action upon the request prior to their argument to the jury, *but the interrogatories shall be submitted to the jury in the form that the court approves.* ***" (Emphasis supplied)

Where properly drawn interrogatories are dispositive of determinative issues, Civ.R. 49 imposes a mandatory duty on the trial court to submit the interrogatories to the jury. See, *Ragone v. Vitali & Beltrami. Jr. Inc.* (1975), 42 Ohio St. 2d 161; *Cincinnati Riverfront Coliseum. Inc. v. McNulty. Co.* (1986), 28 Ohio St.3d 333. The court's discretion in this area is limited to determining whether the proffered interrogatories are confusing or prejudicial. Outside this very narrow scope of discretion, Civ.R. 49 requires the trial court to submit interrogatories to the jury upon a timely request of counsel. See, *Cincinnati Riverfront Coliseum, Inc., supra,* at 336; *Ware v. Richey* (1983), 14 Ohio App.3d 3.

Defendant-Appellant made a timely request of the court to submit two interrogatories to the jury. The interrogatories read as follows:

"1. We the jury find that the conduct of Defendant, Capitol Paper Company, as it relates to the event on October 13, 1987, is best described as (check one):

_____Without fault
_____Negligent
_____Reckless
_____Intentional

"2. We the jury find that on October 13, 1987, Defendant, Capitol Paper Company, knew or believed that its table saw had the following degree of risk of causing the injuries to Patrick Seth.

_____ No risk
_____ Some risk
_____ A great risk
_____ A risk substantially certain to result in Mr. Seth's injuries."

The interrogatories offered by Capitol reasonably attempted to test two aspects of the jury's conclusions concerning Capitol's conduct. The first interrogatory sought to test the jury's conclusion concerning the degree of Capitol's culpability, *e.g.,* negligent, reckless, intentional. The second interrogatory sought to test the jury's conclusion concerning the degree of risk of injury to Seth, *e.g.,* no risk, low, high. The trial court rejected the proposed interrogatories stating (at Tr. 210-211):

"Risk -- not some risk, but great risk -- does not test the ultimate issue in the case. The ultimate issue in the case is whether an intentional tort was committed or was not, and I don't think that the interrogatories as posed are in a proper form; and the Court will reject the interrogatories."

We find that Capitol's interrogatories were in proper form and should have been submitted to the jury. While the trial court correctly framed the ultimate issue for jury determination, Capitol nevertheless had a right under Civ.R. 49 to test the validity of the jury's conclusion vis-a-vis its understanding and application of the law to the facts. The trial court's summary rejection of Capitol's interrogatories denied that right. Capitol's first assignment of error is sustained.

### III. Right to a Jury Trial on Issues of Liability and Damages

Capitol's second assignment of error and Seth's cross-appeal raise the same issues concerning the respective role of the court and jury in employer intentional tort disputes. We will consider the alleged errors together.

Capitol states as its second assignment of error that:

### THE TRIAL COURT ERRED BY ALLOWING PLAINTIFF TO PROCEED WITH A JURY TRIAL IN DEROGATION OF R.C. 4121.80(D).

In his cross appeal, Seth states as his single assignment of error that:

### THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE JURY TO DETERMINE

### THE DAMAGES OF THE PLAINTIFF AFTER THE JURY HAD DETERMINED THE LIABILITY ON THE PART OF THE CAPITOL PAPER COMPANY.

#### A. Jury Trial

The right to a jury trial is a substantive right guaranteed by Article I, Section 5 of the Ohio Constitution. As the Supreme Court observed in *Cleveland Railway Co. v. Halliday* (1933) , 127 Ohio St. 278, 284:

\*\*\* [t]he right to a jury trial derives from Magna Charta. It is reasserted both in the Constitution of the United States and in the Constitution of the State of Ohio. *For centuries it has been held that the right of trial by jury is a fundamental constitutional right, a substantial right, and not a procedural privilege."* (Emphasis supplied)

See, also, *Newnam's Lessee v. Cincinnati,* 18 Ohio 323; *Gibbs v. Girard* (1913), 88 Ohio St. 34. See, also, 64 Ohio Jurisprudence 3d (1985), Jury, Section 15; 47 American Jurisprudence 2d (1969) Jury, Section 8.

A party does not, however, have an automatic right to a jury trial. The right arises only if it was extended by statute or existed "under the principles of the common-law \*\*\* previously to the adoption of the Constitution." *Belding v. State, ex rel. Heifner* (1929), 121 Ohio St. 393, 396. See, also, *Kneisley v. Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, 356. See, generally, 1 Ohio Civil Practice (1988), Jury Trial, Section 27.02. Consequently, whether there is a right to a jury trial in a particular case turns on the nature or origin of the action.

Generally, if the right to a jury is granted by statute the General Assembly may modify the right through legislative enactments. Conversely, if the underlying action originated in the common-law, and thus before the adoption of the Constitution, then the requesting party has a constitutional right to have a jury determine *all issues of material fact.* In this latter situation the General Assembly cannot impede the right through a legislative enactment, for to do so would place the impediment in direct conflict with the constitutional guarantee of Article I, Section 5.

The modern intentional tort is rooted in the ancient common-law action of "trespass for battery." 1 Restatement of the Law 2d, Torts (1965) 25, Section 13, Comment A. See, also, *Kneisley, supra,* at 356; *Van Fossen, supra.* This common-law action was available where an offending party "act[ed] *intending to cause a harmful or offensive contact* with the person of the other or a third person." (Emphasis supplied) 1 Restatement of the

Law 2d, Torts (1965) 25, Section 13, Comment A. Cf., 88 Ohio Jurisprudence 3d (1989) Torts, Section 1. The right to a jury trial attached in "the common-law actions of *** trespass, *** and consequently, in all civil actions under modern practice which formerly would have fallen within some one of these common-law forms of action." 47 American Jurisprudence 2d (1969) Jury, Section 39. Given the intentional tort's roots in the common law, a party bringing such an action is entitled to a jury trial on *all* issues of material fact.

### B. Workers' Compensation

Article II, Section 35 of the Ohio Constitution provides for the establishment of a worker's compensation program. The first two sentences of the section are pertinent to our inquiry.

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

The section goes on to provide a grant of authority to the General Assembly to enact laws establishing, administering, and regulating a state compensation fund to provide compensation to workers and their dependents for injuries sustained during employment. *State, ex rel. Bailey, v. Krise* (1969), 18 Ohio St. 2d 191.

Ohio's workers' compensation program is similar to many others that developed in the early part of the century to cope with the' risks and consequences of injury inherent in industrial employment. In exchange for the relative certainty of swift compensation provided by the system, employees relinquished their right to bring common law actions against their employers for injury and loss. *Van Fossen, supra.* The purpose of worker's compensation legislation was to

"*** require that injuries to workers sustained in the course of their employment be regarded as a charge upon the business in which they are engaged, and that compensation be paid them or their dependents in case of death from a specific fund, through a speedy and inexpensive remedy as a substitute for previous unsatisfactory methods." 93 Ohio Jurisprudence 3d (1989) Workers' Compensation, Section 2.

However, in *Blankenship v. Cincinnati Milacron Chemicals* (1982), 69 Ohio St.2d 608, cert. denied (1982), 459 U.S. 857, the Supreme Court held that injuries suffered by employees as a result of intentional torts of their employers are outside the coverage of Ohio's workers' compensation program established pursuant to Article II, Section 35 of the Constitution and the corresponding legislation in R.C. Chp. 4123. The holding enabled employees to bring civil actions against employers for intentional torts.

The legislative response to *Blankenship* is R.C. 4121.80, enacted in 1986. The statute provides at subparagraph (A) that employees have the right to receive worker's compensation for injuries resulting from intentional torts of their employers and have a cause of action against the employer for "an excess of damages" over the amount so received. The statute declares at subparagraph (B) the intent of the legislature to "remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided." The Section then provides employers with "immunity from common law suit *** to protect those so immunized from litigation outside the worker's compensation system except as herein expressly provided."

The statute goes on at subparagraph (D) to provide that in such civil actions "the court is limited to a determination as to whether or not the employer is liable for damages on the basis that the employer committed an intentional tort." At subparagraph (G) the statute defines "intentional tort" as an act committed with the intent to injure or with the belief that injury is substantially certain to occur.

The provisions of R.C. 4121.80 limiting the determinations of liability to the court has been the subject of judicial review by the Supreme Court on three occasions. Unfortunately, in none of those cases did the court have occasion to address the issue of statute's overall constitutionality.

In *Van Fossen, supra,* the Supreme Court adopted the same definition for intentional tort set up in the statute for acts committed prior to the statute's effective date. The main thrust of the opinion concerned the statute's retroactivity.

In *Kneisley v. Lattimer-Stevens Co.* (1988), 40 Ohio St. 3d 354, the Court construed the liability

determination provisions of R.C. 4121.80(D) to be by way of a bench trial to the court, without a jury. The court found that intentional tort actions derive from actions in trespass, for which a right to jury trial existed prior to the adoption of Ohio's Constitution. The court also found that as to intentional torts R.C. 4121.80(D) now "destroys the right altogether[.]" *Id.* at 357. The court did not address the constitutionality of that result.

Most recently, in *State, ex rel Carpenter, v. Industrial Commission* (1990), 50 Ohio St. 3d 85, the Supreme Court declined to issue a writ of mandamus to the Industrial Commission to pay the amount of a jury verdict in a case governed by R.C. 4121.80. The Court held that the statute gives the Industrial Commission exclusive jurisdiction to determine damages. The Court did not address the constitutionality of that result.

Though the foregoing decisions sustain the statute in several operative provisions, they do not address the issue with which we are here presented, the constitutionality of the deprivation of the right to jury trial. That issue remains without precedent, and we must address it originally.

C. Constitutionality of R.C. 4121.80[1]

The question for resolution is whether R.C. 4121.80 is unconstitutional because it destroys the right of trial by jury on all issues of material fact, including questions of liability and damages. We, as have other courts of appeals, conclude that R.C. 4121.80 is unconstitutional insofar as its provisions impair an employee's constitutional right to a jury trial. Cf. *Palcich v. Mal Bal. Inc.* (December 24, 1987), Geauga App. No. 1394, unreported; *Ulman v. Clyde Super Valu* (September 22, 1989), Sandusky App. No. S-88-48, unreported.

The provisions of Article II, Section 35 of the Constitution authorize the General Assembly to create a workers' compensation system. These provisions *do not* authorize the General Assembly to extend the system to injuries or losses beyond the scope of those set out in Article II, Section 35. Intentional torts, and the losses resulting from them, are outside the scope of that Section. *Blankenship, supra.* Therefore, the General Assembly has no authority derived from the Workers' Compensation section of the Constitution to cover intentional tort injuries or, more pertinent to our inquire, to provide employers any immunity from civil actions brought by employees for them.

The General Assembly may, however, act pursuant to its police powers to extend the benefits of its workers' compensation system, which is an insurance scheme, to other employment-related injuries outside the warrant of Article II, Section 35. It may choose to so compensate those injured by the intentional torts of their employers. However, it has no authority to extend thereby the concomitant immunity from civil liability created in Article II, Section 35, or to otherwise limit the right of jury trial by extending those benefits. *State ex rel. Yaple v. Creamer* (1912), 85 Ohio St. 349. Such legislative action impairs an employee's constitutional right to have a jury determine all issues of material fact and is, therefore, unconstitutional. *Id.*, at 377.

The right to bring an action for intentional tort existed prior to the adoption of the Constitution of Ohio. That right may not be limited by subsequent legislative enactment. By denying the right to have a jury determine liability, which is an issue of material fact, R.C. 4121.80 limits the right of trial by jury as guaranteed by Article I, Section 5 of the Constitution. To that extent the statute is unconstitutional.

In addition to determining liability and culpability, the assessment of damages is a determination of fact falling within the province of the jury. As observed in *Spicer v. Armco Steel Corp.* (App. 1974), 68 Ohio Op.2d 314, 315:

"*** *it is axiomatic that the assessment of damages is thoroughly and peculiarly within the province of the jury which heard the testimony* and appraised the witnesses as the incidents giving rise to the injury unfolded before it, and that such appraisal should not be disturbed *** unless 'their judgment appears to have been the result of passion and prejudice *** [.]'*" (Citations omitted) (Emphasis supplied)

See, also, *Mowery v. Smith* (October 9, 1987), Allen App. No. 1-86-51, unreported; *Siwillo v. Dreis & Krump Manufacturing Co.* (May 5, 1986), Cuyahoga App. Nos. 50430, 50469, 50522, unreported; *Land v. Bruendler International AG* (June 20, 1984), Hamilton App. No. C830484, unreported; *Lindsey v. Vogel* (November 23, 1983), Hamilton App. No. C830122, unreported; *Margiotla v. Douglas* (December 20, 1983), Cuyahoga App. No. 44687, unreported; *Ranallo v. Morich* (May 22, 1981), Erie App. No. E-80-38, unreported; *Huston v. Osky* (May 6, 1981), Hamilton App. No. C800463, unreported; *Taylor v. Gardner* (November 22, 1978), Hamilton App. No. C77198, unreported. See, generally, 1 Minzer, et al., Damages in Tort Actions (1990), Role of Court & Jury, Section 1.31[1].

Where the modern action arises from a cause rooted in the common law, the right to a jury trial extends to all factual issues including assessment

of damages. The General Assembly cannot impair the exercise of this right by assigning factual liability issues to the jury while reserving factual damages issue to the court or the Industrial Commission. Such a piecemeal division of fact determinations violates the movant's constitutional right secured under Article I, Section 5.

For the foregoing reasons, we join with the determinations of the Court of Appeals of Geauga County in *Palcich v. Mal Bal, Inc., supra,* and the Court of Appeals of Sandusky County in *Ulman v. Clyde Super Valu, supra,* and find that R.C. 4121.80 is unconstitutional to the extent that it deprives litigants of their right to trial by jury as guaranteed in Article I, Section 5 of the Constitution of Ohio. We hold that the right extends to determinations of all material facts in cases of intentional torts committed by employers to the injury of employees, including liability and damages. The trial court erred in failing to allow the jury to determine damages in the trial of this matter.

Capitol's second assignment of error is overruled. Seth's cross-appeal error is sustained.

### IV. Sufficiency of the Evidence

Capitol's third and fourth assignments of error raise similar questions as to whether Seth met his burden of proving each element of the alleged intentional tort. Accordingly, we will consider them together. Capitol states:

### III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL.

### IV. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT DEFENDANT A JUDGMENT NOTWITHSTANDING THE VERDICT PURSUANT TO CIV.R. 50(B).

In ruling on a motion for a new trial because the judgment is not supported by the evidence, Civ.R. 59 (A) (1), the trial court must examine the evidence and weigh the credibility of the witnesses. *Rohde v. Farmer* (1970), 23 Ohio St. 2d 82. If the court finds that the plaintiff failed to present sufficient evidence to sustain his burden, the motion should be granted. However, the court may not set aside a verdict merely because it disagrees with the jury's conclusions.

By contrast, in determining whether to grant a judgment notwithstanding the verdict, Civ.R. 50, the trial court must assume the truth of the adverse party's evidence and provide it a favorable construction. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271; *Peters v. B & F*

*Transfer Co.* (1966), 7 Ohio St.2d 143; *Burrow v. Porterfield* (1960), 171 Ohio St. 28; *Hamden Lodge v. Ohio Fuel and Gas Co.* (1934), 127 Ohio St. 469. If after so construing the evidence the court concludes that the party against whom the motion is made has failed to prove all essential elements of the cause of action, the court must grant the movant his motion. *Peters, supra.* Unlike a motion for a new trial, the court may not weigh the evidence or the credibility of the witnesses. *Osler v. City of Lorain* (1986),. 28 Ohio St.3d 345. The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test the court must apply in ruling on a motion for directed verdict. *Ayers v. Woodard* (1957), 166 Ohio St. 138.

R.C. 4121.80(G)(1) provides, in relevant part:

"(1) *'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.*

"Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

"*Substantially certain means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition or death.*" (Emphasis supplied)

To prove that an employer committed an intentional tort, the employee must present evidence beyond that required to prove negligence or' recklessness. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, *Van Fossen, supra,* at 117. Rather, the employee must prove by a preponderance of the evidence that the employer knowingly intended to injure the employee. As stated in *Van Fossen, supra,* at 116:

"*** in order for 'intent' to be found for the purpose of proving the existence 'of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within his business operation; (2) knowledge by the employer that if the employees are required by virtue of their employment to be subject to such dangerous process, procedure, instrumentality or condition, then harm to them would be a substantial certainty, and not just a high risk; (3) that the employer, under such circumstances, and with

such knowledge, did act to so require the employee to continue performing his employment tasks."

The tripartite *Van Fossen* test is conjunctive. The burden to prove by a preponderance of the evidence that the employer had sufficient knowledge amounting to a substantial certainty that injury would occur rests with the employee throughout the proceedings. *Pariseau v. Wedge Products. Inc* (1988), 36 Ohio St. 3d 124, 127.

On the facts before it the jury could conclude that an injury to an operator of the saw, should it occur, could be a serious injury. However the record must also support a conclusion that the employer intended the injury or knew with substantial certainty that it would occur. The two are not the same.

The record shows that Capitol knew of four prior accidental injuries to operators of the saw. However, those injuries took place over a four year period. The record does not show how they occurred or how they could have been avoided. Though hood guards could have been employed, Seth's expert Troyer admitted that the guard is ineffective in protecting the operator during sawing operations. (Tr. 85).

We conclude that while the record supports a conclusion that operators of the table saw run a risk of serious injury it does not support a conclusion that Capitol knew that Seth's injury was substantially certain to occur. Mere knowledge and appreciation of risk is not intent.

"There are many acts within the business of manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' and there an exception, under *Blankenship* or *Jones,* to the exclusivity of the Act." *Van Fossen, supra,* at 117.

If "intentional tort" is interpreted too broadly, the exception would swallow up the entire exclusivity provision of the Worker's Compensation system. To avoid that result the courts must be:

"careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality – but a reality nevertheless – that industry knowingly exposes workers to the risks of injury and disease." *Van Fossen, supra,* at 116, quoting *Millison v. E.I. duPont de Nemours & Co.* (1985), 101 N.J. 161,

501 A. 2d 505. While the conduct of Defendant-Appellant might be found to be negligent, or even reckless or wanton with regard to the safety of its workers, it does not constitute an action taken with substantial certainty that injury would result.

We find that reasonable minds, after construing the evidence most strongly in favor of Appellee Seth, could only conclude that Appellant acted without the intent to injure Appellee required by R.C. 4181.20, either specifically or in the substituted form of substantial certainty that injury would occur, in employing Seth to perform the duties from which his injury resulted. Therefore, the trial court erred in failing to grant his motion for judgment notwithstanding the verdict. Because a new trial is not merited, the trial court did not err in failing to grant Appellant's motion for a new trial.

### V. Conclusion

For the reasons stated above, the decision of the trial court is reversed. Accordingly, we remand this case to the Court of Common Pleas and mandate entry of Judgment Notwithstanding the Verdict in favor of Defendant-Appellant, Capitol Paper Company

WOLFF, P.J., and WILSON, J., concur.

---

[1] Though the majority opinion did not address constitutionality, the dissenting opinion of Justice Douglas suggests that the majority opinion operates to support the constitutionality of the statute's denial of the right to trial by jury de facto. Justice Douglas, joined by Justices Sweeney and Resnick, would hold the statute unconstitutional on that issue.